UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN R. HOULE,

        Plaintiff,

   v.

JUBILEE FISHERIES, INC., et al.,

        Defendants.

CASE NO. C04-2346JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment and an order striking testimony from two of Plaintiff's expert witnesses (Dkt. # 28). Although Plaintiff has requested oral argument, the court finds the motion suitable for disposition based on the parties' briefing and accompanying declarations. For the reasons stated below, the court GRANTS Defendants' motion in part and DENIES it in part.

## II. BACKGROUND

Plaintiff John Houle worked as a deckhand aboard the F/V KJEVOLJA ("KJEVOLJA"), a fishing and processing boat that Defendants own and operate. On a voyage in March 2003, Plaintiff began experiencing severe pain in his arms and wrists. Since the voyage, Plaintiff's physician, Dr. Stephen Fuhs, has diagnosed him with bilateral carpal tunnel syndrome ("CTS"), has performed two surgeries to relieve his condition, and has advised him that he should not return to work in the fishing industry.

ORDER – 1

Mr. Houle claims that Defendants' negligence and unseaworthy vessel were causes of his CTS. Although it is not entirely clear from the record before the court, Defendants seem to argue that the cause of his CTS was an accident onboard the KJEVOLJA in which a wave knocked Mr. Houle against a bulkhead.

In this motion, Defendants assail Mr. Houle's evidence of the cause of his CTS. They claim that the only sources of evidence of causation are the testimony of Captain Charles Jacobsen and Dr. Fuhs. They argue that the court should exclude each witness's testimony on causation under the standards enunciated in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its progeny. They also argue that the court should enter summary judgment against Mr. Houle's claims because he has no other evidence to prove that Defendants caused his CTS.

### III. ANALYSIS

On a motion for summary judgment, the court is constrained to draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Mr. Houle's claims under the Jones Act and the maritime doctrine of unseaworthiness have different causation standards. A Jones Act plaintiff must establish

ORDER – 2

that he was injured, that the shipowner was negligent, and that "the negligence was a cause, however slight, of his injuries." <u>Havens v. F/T Polar Mist</u>, 996 F.2d 215, 218 (9th Cir. 1993); <u>Ribitzki v. Canmar Reading & Bates, Ltd.</u>, 111 F.3d 658, 664 (9th Cir. 1997) ("Th[e] [Jones Act negligence] test, often described as a featherweight causation standard, allows a seaman to survive summary judgment by presenting even the slightest proof of causation."). A plaintiff making an unseaworthiness claim must satisfy a higher standard. <u>Johnson v. Arctic Storm, Inc.</u>, No. C01-1353L, 2003 U.S. Dist. LEXIS 26317, at *4 n.2 (W.D. Wash. 2003) (Lasnik, J.) ("Proximate cause in an unseaworthiness claim means that the employer's negligence played a substantial part in bringing about or actually causing the injury, in contrast to the significantly lighter causation burden in Jones Act claims.") (internal quotations omitted); <u>Wuestewald v. Foss Mar. Co.</u>, 319 F. Supp. 2d 1002, 1009 (N.D. Cal. 2004) (adopting substantially identical standard).[1] Mr. Houle relies on the testimony of Captain Jacobsen and Dr. Fuhs to meet these standards.

The court excludes Captain Jacobsen's causation testimony. Captain Jacobsen has extensive experience in the fishing industry, and no doubt possesses a wealth of knowledge regarding maritime matters. His observations of CTS in the fishing industry, coupled with reading a few articles regarding CTS, however, fall well short of establishing the expertise necessary to opine on the cause of CTS in Mr. Houle. The court is mindful that there are cases in which courts have found that a person who is not a medical doctor has the expertise necessary to determine the cause of a medical condition,

---

[1] The Ninth Circuit has not definitively compared Jones Act and unseaworthiness causation standards, but the comparison in <u>Johnson</u> and <u>Wuestewald</u> is consistent with other circuits. <u>See</u>, e.g., <u>Poulis-Minott v. Smith</u>, 388 F.3d 354, 366 (1st Cir. 2004); <u>Gosnell v. Sea-Land Serv., Inc.</u>, 782 F.2d 464, 467 (4th Cir. 1986); <u>Johnson v. Offshore Express, Inc.</u>, 845 F.2d 1347, 1354 (5th Cir. 1988); <u>Miller v. Amer. President Lines, Ltd.</u>, 989 F.2d 1450, 1463 (6th Cir. 1993); <u>Brown v. OMI Corp.</u>, 863 F. Supp. 169, 170 (S.D.N.Y. 1994) (noting absence of Second Circuit precedent).

ORDER – 3

but this is not one of those cases. Captain Jacobsen's opinion testimony on causation is inadmissable.[2]

To answer the much closer question that Dr. Fuhs' causation testimony presents, the court must review his opinion and the basis for it. Dr. Fuhs' "expert report" concerning the cause of Mr. Houle's CTS consists of a two-page declaration. Only two paragraphs of the declaration address causation. Fuhs Decl. ¶¶ 5-6. Those paragraphs state that based on Dr. Fuhs' "understanding" of Mr. Houle's "work and activities" aboard the KJEVOLJA, the work and activity "probably caused" his CTS. Id. The vague language in those paragraphs leaves many questions about the basis for Dr. Fuhs' opinion. Dr. Fuhs provided distressing answers to those questions in his deposition. He admitted that virtually all of his "understanding" about Mr. Houle's work on the KJEVOLJA came from a meeting with his attorneys in June 2005.[3] Fuhs Dep. at 26, 30, 41. There is very little evidence of what counsel specifically told Dr. Fuhs to allow him to reach his "understanding," other than an admission that they showed him fish catch records from the KJEVOLJA. Id. at 30-36. Dr. Fuhs never met with Mr. Houle to confirm what his attorneys told him. Id. at 29, 34. Dr. Fuhs never visited the KJEVOLJA or looked at pictures or other representations of the workstations aboard the KJEVOLJA. Id. at 42.

---

[2] Although the declarations of Dr. Bradley Evanoff and Dr. Peter Johnson regarding Captain Jacobsen's qualifications are untimely, the court has reluctantly considered them. They do not alter the court's ruling. The court queries whether it is appropriate to offer expert testimony on the subject of whether other experts are qualified. It need not answer that question here. Dr. Evanoff and Dr. Johnson will not offer further testimony, as Plaintiff did not timely disclose them as experts.

[3] The deposition transcript creates confusion over when the meeting between counsel and Dr. Fuhs occurred. Fuhs. Dep. at 25 (counsel states that meeting occurred in June 2004, while Dr. Fuhs states that it occurred in June 2005). From the context of the deposition and the June 2005 date of the declaration that resulted from the meeting, the court concludes that the meeting took place in June 2005.

ORDER – 4

At the time Dr. Fuhs submitted his expert report, there is no evidence that he considered any other potential causes of Plaintiff's CTS. He considered a few other possibilities (e.g., obesity, diabetes), but only in the hours preceding his deposition. Id. at 37-39. Dr. Fuhs never considered whether other activities that Mr. Houle engaged in may have caused his CTS. Id. at 50. Until his deposition, he had not considered whether the wave that knocked Mr. Houle into a bulkhead aboard the KJEVOLJA was a cause of his CTS. Id. at 16-18; see also id. at 6-16 (describing Dr. Fuhs' awareness of the accident).

In deciding whether Dr. Fuhs' causation testimony is sufficiently reliable, the court takes up the Supreme Court's charge to serve as a gatekeeper for the admissibility of scientific expert testimony. Daubert, 509 U.S. at 597. Daubert focused on a trial court's obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589 (citing Fed. R. Evid. 702 as the "primary locus" of the obligation). In considering the admissibility of scientific evidence in a summary judgment motion, the court's role is no different than it would be at trial. Guidroz-Brault v. Mo. Pac. R.R. Co., 254 F.3d 825, 829-830 (9th Cir. 2001); Kennedy v. Collagen Corp., 161 F.3d 1226, 1227 (9th Cir. 1998); Daubert v. Merrell Dow Pharm., Inc. ("Daubert II"), 43 F.3d 1311, 1315 (9th Cir. 1995) (noting the district court's freedom to apply the Daubert test in summary judgment proceedings).

Medical testimony on causation is a type of scientific testimony that must satisfy the Court's mandate in Daubert. See Claar v. Burlington Northern Railroad Co., 29 F.3d 499, 500-501 (9th Cir. 1994). In serving its gatekeeping role, the court must conduct a "preliminary *assessment of whether the reasoning or methodology underlying the testimony is scientifically valid . . . .*" Id. at 501 (emphasis in original). Even on summary judgment, the court is "both authorized and obligated to scrutinize carefully the reasoning and methodology underlying the affidavits" that a physician offers. Id.

ORDER – 5

As a preliminary matter, the court finds that Dr. Fuhs has the expertise to diagnose CTS, and that he has the expertise to determine whether the conditions onboard the KJEVOLJA were a cause of Mr. Houle's CTS.  No one challenges Dr. Fuhs' diagnostic expertise, and Defendants' evidence that Dr. Fuhs is not an expert in the causes of CTS does not render him incapable of pinpointing likely causes in a given patient.

Dr. Fuhs' methodology, however, is much more suspect.  First, it is troubling that Dr. Fuhs' causation testimony is based not on what Plaintiff told him, or on what he personally observed, but rather on a conversation with Plaintiff's attorneys.  The court cannot, however, exclude Dr. Fuhs' testimony on that basis.  An expert is permitted to render an opinion based on inadmissible or hypothetical evidence.  Fed. R. Evid. 703.  At trial, defense counsel will no doubt demonstrate on cross-examination that Dr. Fuhs' causation testimony rests solely on what Plaintiff's lawyers told him.  Counsel will likely point out that with the exception of the fish catch records, Dr. Fuhs has little specific recollection of what the lawyers told him.  Although the question is not before the court, it may be that Plaintiff's lawyers must testify as to what they told Dr. Fuhs.  The cornucopia of criticisms of this methodology, however, is fodder for cross-examination as to the weight the jury should afford Dr. Fuhs' testimony.  It is not a basis for excluding the testimony.  Sementilli v. Trinidad Corp., 155 F.3d 1130, 1134 (9th Cir. 1998).

The second problem with Dr. Fuhs' methodology is his failure to consider alternate causes for Plaintiff's CTS.  See Clausen v. M/V New Carissa, 339 F.3d 1049, 1058 (9th Cir. 2003) ("[E]xpert testimony that neglects to consider a hypothesis that might explain the clinical findings under consideration may also be unreliable.").  There is no requirement that an expert consider and rule out every other potential cause of an illness.  Westberry v. Gislaved Gummi AB, 178 F.3d 257, 265 (4th Cir. 1999) (cited in Clausen, 339 F.3d at 1058).  On the other hand, a "diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis

ORDER – 6

for an opinion on causation." Clausen, 339 F.3d at 1058 (quoting Westberry, 178 F.3d at 265).

The court has discretion to decide whether Dr. Fuhs' failure to consider other causes of Mr. Houle's CTS warrants excluding his testimony. Clausen, 339 F.3d at 1061. As to Mr. Houle's Jones Act claim, the court will admit the testimony. The Jones Act requires only that Defendants' negligence be a slight cause of Plaintiff's CTS. Under that standard, an expert has less need to consider other causes of an injury. As the Ribitzki court noted, the "featherweight causation standard" for Jones Act claims "allows a seaman to survive summary judgment by presenting even the slightest proof of causation." 111 F.3d at 664. Dr. Fuhs' testimony is perhaps the slightest proof of causation that the court can envision,[4] but it suffices on summary judgment.

As to the unseaworthiness claim, however, the higher causation standard leads the court to exclude Dr. Fuhs' testimony. Dr. Fuhs' failure to consider other causes means that he has no reliable basis for concluding that Mr. Houle's shipboard work was a "substantial" cause of his injury. Because Plaintiff has put forth no other evidence of causation, the court grants summary judgment for Defendants on the unseaworthiness claim.[5]

---

[4]The court does not suggest any infirmities in Dr. Fuhs' diagnosis and treatment of Mr. Houle. However, as Dr. Fuhs admitted, his interaction with Mr. Houle was focused on treating his condition, not identifying its cause. Fuhs Dep. at 16. Given this admission, Plaintiff's decision to seek causation opinions from Dr. Fuhs without having him develop a substantially more robust basis for those opinions is questionable at best.

[5]Plaintiff suggests that it is sufficient for Dr. Fuhs to identify activities that would place a person at risk for CTS and have the jury conclude whether Mr. Houle's activities caused his CTS. The Ninth Circuit implicitly rejected this argument in Claar. 29 F.3d at 503 (citing Edmonds v. Illinois Central Gulf R.R., 910 F.2d 1284, 1288 (5th Cir. 1990). The Claar court recognized that some conditions require "no special expertise" to "draw a causal inference," id. at 504, but Plaintiff has not presented evidence from which the court can conclude that CTS is such a condition.

ORDER – 7

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion (Dkt. # 28) to the extent that it seeks to exclude Captain Jacobsen's testimony on the cause of Mr. Houle's CTS and to the extent it seeks summary judgment on Mr. Houle's unseaworthiness claim.  The court DENIES the motion to the extent it seeks to exclude Dr. Fuhs' causation testimony and to the extent it seeks summary judgment on Mr. Houle's Jones Act claim.

At trial, Dr. Fuhs may testify on direct examination only as to the basis for the opinions at the time he filed his brief expert report.  He may not testify regarding information he later acquired to support those opinions.

The court declines to rule on the motion to strike contained in Defendants' reply brief.  The court has considered all of the challenged evidence, and finds that it does not alter the court's ruling.

Dated this 14th day of December, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 8