UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN R. HOULE,

          Plaintiff,

    v.

JUBILEE FISHERIES, INC., et al.,

          Defendants.

CASE NO. C04-2346JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment and an order striking testimony from two of Plaintiff's expert witnesses (Dkt. # 28), Defendants' motion in limine (Dkt. # 46), and Plaintiff's motion in limine (Dkt. # 48). For the reasons stated below, the court reserves its ruling on Defendants' motion for summary judgment pending an evidentiary hearing. The court GRANTS the remaining motions in part and DENIES them in part.

## II. BACKGROUND

Plaintiff John Houle worked as a deckhand aboard the F/V KJEVOLJA ("KJEVOLJA"), a fishing and processing boat that Defendants own and operate. On a voyage in March 2003, Plaintiff began experiencing severe pain, tingling, and numbness

ORDER – 1

in his arms and wrists. Since the voyage, Plaintiff's physician, Dr. Stephen Fuhs, has diagnosed him with bilateral carpal tunnel syndrome ("CTS"), has performed two surgeries to relieve his condition, and has advised him that he should not return to work in the fishing industry.

The parties vigorously dispute the cause of Mr. Houle's CTS. In his claims under the Jones Act and the maritime doctrine of unseaworthiness, Mr. Houle claims that Defendants' negligence and unseaworthy vessel are responsible, at least in part. Mr. Houle relies on expert testimony to prove his causation allegations. Challenges to that expert testimony and the testimony of other experts pervade all of the pending motions.

### III. ANALYSIS

**A.     The Parties Ignored the Federal Rules of Civil Procedure in Disclosing Expert Testimony.**

Rule 26 of the Federal Rules of Civil Procedure set forth directions for the disclosure of expert testimony. Any purported expert "who is retained or specially employed to provide expert testimony in the case" must provide a "written report" that contains, among other disclosures, a "complete statement of all opinions to be expressed and the basis and reasons therefor . . . ." Fed. R. Civ. P. 26(a)(2)(B). The disclosure of an expert's identity and his or her report must comply with the court's scheduling order. Fed. R. Civ. P. 26(a)(2)(C). The only experts exempted from this rule are rebuttal experts, those who offer opinions "solely to contradict or rebut evidence on the same subject matter identified by another [expert witness]." Id. A rebuttal expert must disclose his or her report within 30 days of the report that he or she is rebutting. Id.

The parties appear to view Rule 26 to be a suggestion rather than a mandate. After multiple continuances and re-continuances, the parties settled upon a September 15, 2005 deadline for the disclosure of expert testimony, and an October 14 deadline for the

ORDER – 2

disclosure of rebuttal expert testimony.[1] (Dkt. ## 13, 15). On or about September 15, 2005, Plaintiff disclosed four witnesses: Dr. John Finch, Stan Owings, Captain Charles Jacobsen, and Dr. Fuhs. Jordan Decl., Ex. 9 (September 15, 2005 letter from Plaintiff's counsel). Of those witnesses, only Dr. Fuhs offered testimony on the cause of Mr. Houle's CTS.[2] Defendants disclosed no expert witnesses.

On October 24, Defendants disclosed Dr. Nortin Hadler as a rebuttal witness. The only one of Plaintiff's experts that Dr. Hadler mentioned in his accompanying report was Dr. Fuhs. Dr. Hadler opined that, contrary to Dr. Fuhs' assertion, repetitive work does not cause CTS. In a November 8 supplemental report, Dr. Hadler reiterated his opinions based on a newly published study of automobile assembly-line workers.[3]

Defendants also disclosed Eugene Silberberg, William Skilling, and Steven Hughes as rebuttal experts on October 24. Each of these witnesses purported to rebut the testimony of Dr. Finch and Mr. Owings regarding damages issues. Defendants concede that they disclosed these witnesses 10 days late.

On October 28, Defendants filed the instant summary judgment motion, challenging the expert testimony of Dr. Fuhs and Capt. Jacobsen. Defendants did not cite any of their own experts' testimony in the motion.

---

[1]The parties privately agreed to extend these deadlines yet another week for reports on liability. Mortensen Decl. Ex. 4. The extension did not affect reports on damages issues.

[2]The parties suggest that Capt. Jacobsen opined about the cause of Mr. Houle's CTS in his expert report. He did not. He first offered this opinion in his deposition, which came a month after his report. Compare Jacobsen Rep. at 2-3 with Jacobsen Dep. at 22-24, 88-93.

[3]Along with Dr. Hadler, Defendants also disclosed Kate Stewart and Keith Johnson as experts on October 24. Rutzick Decl. Ex. 5. Defendants have apparently withdrawn Ms. Stewart as a witness. As to Mr. Johnson, the record does not reveal the subject of his testimony or any objections to his testimony.

ORDER – 3

On November 19, more than two months after the deadline for disclosing expert reports, Plaintiff offered declarations from Dr. Peter Johnson and Dr. Bradley Evanoff. Both declarants testified in support of Capt. Jacobsen's opinions and methodology. In a letter the next day, Plaintiff's counsel claimed that Dr. Evanoff was "a rebuttal expert to [Dr.] Hadler." Mortensen Decl. Ex. 7. Counsel made this designation even though Dr. Evanoff did not mention Dr. Hadler, cite his report, or otherwise indicate that he was aware of Dr. Hadler's opinions in this case.[4]

Both parties accuse each other of violating Rule 26. Both are right. Both parties could have taken a variety of actions to cure the prejudice arising from the late disclosures. They could have stipulated to late depositions of the late-disclosed experts. They could have sought immediate relief from the court. Instead, they chose to point their fingers at each other in misplaced hope that the court would ignore one party's misfeasance while punishing the other's. The court will not reward their conduct.

No late-disclosed experts will provide testimony in this action. The court has substantial discretion to permit untimely disclosures and to take measures to cure the prejudice that accompanies them. The court also has substantial discretion to exclude such disclosures. Here, where the trial date is fast approaching, where both parties have violated Rule 26 and the court's scheduling orders, and where both parties have been prejudiced, exclusion is the better remedy. Dr. Evanoff, Dr. Johnson, Mr. Silberberg, Mr. Skilling, and Mr. Hughes will not testify at trial.

---

[4]For this reason, Dr. Evanoff is not a "rebuttal expert." Even if he were, however, the federal rules do not contemplate "sur-rebuttal" experts. Ordinarily, if expert B rebuts expert A, expert A will be able to address the defects in expert B's testimony. If the circumstances in this case made it impossible for Dr. Fuhs to address Dr. Hadler's rebuttal testimony, it would have been incumbent upon Plaintiff to seek a stipulation or leave of court to name a new expert.

ORDER – 4

1  **B.  On the Record Before It, the Court Cannot Determine the Admissibility of Dr. Fuhs' and Capt. Jacobsen's Opinions on the Cause of Mr. Houle's CTS.**

Mr. Houle's Jones Act and unseaworthiness claims require him to prove that Defendants caused his CTS. A Jones Act plaintiff must establish that he was injured, that the shipowner was negligent, and that "the negligence was a cause, however slight, of his injuries." Havens v. F/T Polar Mist, 996 F.2d 215, 218 (9th Cir. 1993); Ribitzki v. Canmar Reading & Bates, Ltd., 111 F.3d 658, 664 (9th Cir. 1997) ("Th[e] [Jones Act negligence] test, often described as a featherweight causation standard, allows a seaman to survive summary judgment by presenting even the slightest proof of causation."). A plaintiff making an unseaworthiness claim must satisfy a higher standard. Johnson v. Arctic Storm, Inc., No. C01-1353L, 2003 U.S. Dist. LEXIS 26317, at *4 n.2 (W.D. Wash. 2003) (Lasnik, J.) ("Proximate cause in an unseaworthiness claim means that the employer's negligence played a substantial part in bringing about or actually causing the injury, in contrast to the significantly lighter causation burden in Jones Act claims.") (internal quotations omitted); Wuestewald v. Foss Mar. Co., 319 F. Supp. 2d 1002, 1009 (N.D. Cal. 2004) (adopting substantially identical standard).[5]

Plaintiff relies on the testimony of Dr. Fuhs and Captain Jacobsen to establish causation. Although they acquired their expertise differently, the substance of their causation opinions is similar. Dr. Fuhs diagnosed Mr. Houle with CTS and treated him. No one disputes his diagnosis. Dr. Fuhs admits that he was initially concerned with Mr.

---

[5] The Ninth Circuit has not definitively compared Jones Act and unseaworthiness causation standards, but the comparison in Johnson and Wuestewald is consistent with other circuits. See, e.g., Poulis-Minott v. Smith, 388 F.3d 354, 366 (1st Cir. 2004); Gosnell v. Sea-Land Serv., Inc., 782 F.2d 464, 467 (4th Cir. 1986); Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir. 1988); Miller v. Amer. President Lines, Ltd., 989 F.2d 1450, 1463 (6th Cir. 1993); Brown v. OMI Corp., 863 F. Supp. 169, 170 (S.D.N.Y. 1994) (noting absence of Second Circuit precedent).

ORDER – 5

Houle's diagnosis and treatment, not with the cause of his condition.  Much later, Plaintiff's attorneys approached Dr. Fuhs to discuss causation.  They provided him with information about Mr. Houle's activity aboard the KJEVOLJA.  Dr. Fuhs then provided a very simple causation opinion.  He determined that Mr. Houle had not shown symptoms of CTS before his time on the KJEVOLJA.  He determined that those symptoms first arose while he was aboard the vessel.  Based on his own experience treating fishermen and his discussions with counsel, he noted that Mr. Houle's work involved repetitive stressful motions of the upper extremities, a risk factor for CTS.  He thus opined that, on a more probable than not basis, Mr. Houle's work aboard the KJEVOLJA caused his CTS.

      Capt. Jacobsen reached the same conclusion, using a similar methodology.  Based on his discussions with counsel and with Mr. Houle, he determined that Mr. Houle showed no symptoms of CTS before his time on the KJEVOLJA.  The same discussions revealed that Mr. Houle's symptoms arose while he was working on the KJEVOLJA, that those symptoms continued after he left the ship, and that Dr. Fuhs diagnosed those symptoms as CTS.  Although Capt. Jacobsen has not diagnosed or treated fishermen with CTS, he has dealt with them extensively as a captain.  He has been trained to identify CTS risk factors on fishing boats, and to reduce those risks.  His experience with fishing vessels, coupled with his discussions with counsel and Mr. Houle regarding conditions aboard the KJEVOLJA, led him to conclude that there were risk factors aboard the KJEVOLJA, and that Mr. Houle's work forced him to encounter those risk factors.  He, like Dr. Fuhs, opined that Mr. Houle's onboard work must have caused his CTS.

      Defendants' attempt to exclude the opinion testimony of Dr. Fuhs and Capt. Jacobsen on the cause of Plaintiff's CTS.  They ground their attack in Federal Rule of

ORDER – 6

Evidence 702, which sets the standard for the admissibility of opinion testimony based on "scientific, technical, or other specialized knowledge."

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 requires the trial court to make several preliminary determinations before admitting the testimony. See Fed. R. Evid. 104(a) (establishing the trial court's responsibility for determining admissibility of evidence). The court in United States v. Hankey summarized those determinations, which include "[w]hether the opinion is based on scientific, technical, or other specialized knowledge;" "[w]hether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;" "[w]hether the expert has appropriate qualifications - i.e., some special knowledge, skill, experience, training or education on that subject matter . . . ;" "[w]hether the testimony is relevant and reliable . . . ;" and "[w]hether the methodology or technique the expert uses "fits" the conclusions . . . ." 203 F.3d 1160, 1168 (9th Cir. 2000).

Defendants focus their attack on Dr. Fuhs' and Capt. Jacobsen's qualifications to assess the causation of CTS, and the reliability of their causation opinions. The latter challenge invokes Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its progeny. Defendants' focus on Daubert is understandable, because if the decisions of numerous district courts outside this circuit are any indication, Dr. Fuhs' and Capt. Jacobsen's causation opinions are unlikely to pass muster under Daubert. Defendants cite a number of these cases. E.g., Stasior v. Nat'l R.R. Passenger Corp.,19 F. Supp. 2d 835, 845-53 (N.D. Ill. 1998); Dukes v. Ill. Cent. R.R. Co., 934 F. Supp. 939, 947-953 (N.D. Ill. 1996); Zarecki v. Nat'l R.R. Passenger Corp., 914 F. Supp. 1566, 1572-74 (N.D. Ill.

ORDER – 7

1996); McIntosh v. Union Pac. R.R. Co., Civ. No. 4-95-CV-90833, 1998 U.S. Dist. LEXIS 23510, at *34-50 (S.D. Iowa April 7, 1998); Lovato v. Burlington N. & Santa Fe Railway Co., No. 00-RB-2584 (CBS), 2002 U.S. Dist. LEXIS 16844, at *13-27 (D. Colo. June 21, 2002); Magdaleno v. Burlington N. R.R. Co., 5 F. Supp. 2d 899, 903-906 (D. Colo. 1998).  In each case, the court engaged in a lengthy and complex analysis of an expert's CTS causation opinion, and found that the expert's opinion did not pass muster under Daubert.  The court's discussion in each of these cases strongly suggests that, under Daubert, attributing a cause to a person's CTS is a much more difficult matter than the opinion of Dr. Fuhs or Capt. Jacobsen would suggest.

None of those cases, however, answers a more fundamental question before this court: How much special expertise do Dr. Fuhs and Capt. Jacobsen require to opine on the cause of Mr. Houle's CTS?  The Ninth Circuit has recognized that there are situations in which no expertise is necessary to draw a causal inference about a medical condition.  See Claar v. Burlington Northern R.R. Co., 29 F.3d 499, 504 (9th Cir. 1994).  In particular, when a medical condition arises from a "traumatic 'accident' or event" that presents a risk for that condition, "everyday experience" may be sufficient to draw a causal connection between the event and the injury.  See Moody v. Maine C. R. Co., 823 F.2d 693, 696 (1st Cir. 1987) (cited in Claar, 29 F.3d at 504).  In this case, the "traumatic event" was the intense exposure to repetitive motion tasks aboard the KJEVOLJA.  The testimony of Captain Jacobsen and Dr. Fuhs is that, based on their experience, the proximity of the "traumatic event" and the appearance of CTS symptoms in Mr. Houle warrants a causal inference.  The evidence before the court does not reveal why this methodology is inadequate.

The court acknowledges that the cases on which Defendants rely either implicitly or explicitly find that CTS is not the sort of "injury" that can be causally connected to

ORDER – 8

risky behavior as a matter of proximity and logic. The court has no quarrel with those findings, but they are findings of fact, and the court is not at liberty to adopt them. Unlike legal precedent, factual precedent cannot bind the court except in cases of res judicata or collateral estoppel. The court must make factual findings based on the evidence before it. The evidence before the court does not explain why it is inappropriate or appropriate to draw a causal inference regarding Mr. Houle's CTS based on the temporal proximity of his exposure to risk factors on the KJEVOLJA and the appearance of his symptoms. The court does not suggest that attributing a cause to CTS in this case is as elementary as attributing a cause to a car accident victim's broken leg. See Moody, 823 F.2d at 696. The cause of CTS is no doubt more difficult to pinpoint. Dr. Fuhs' and Capt. Jacobsen's experience, however, means that they have more than just "common knowledge." They have substantial experience with CTS and its risk factors, but little technical training in identifying its causes. Is this sufficient to qualify them to offer causation opinions?

Under Daubert, the court must act as a "gatekeeper" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. The court serves this gatekeeping role not only in conducting a Daubert analysis, but in all preliminary questions of admissibility. Hankey, 203 F.3d at 1168. In serving its gatekeeping role, the court must conduct a "preliminary *assessment of whether the reasoning or methodology underlying the testimony is scientifically valid . . . .*" Daubert, 509 U.S. at 501 (emphasis in original). Even on summary judgment, the court is "both authorized and obligated to scrutinize carefully the reasoning and methodology underlying the affidavits" that an expert offers. Id. As the Ninth Circuit has noted, however, this assessment is a "complex and daunting task," and one that "puts federal judges in an uncomfortable position." Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II"). This is a court of law, not one of medicine or

ORDER – 9

ergonomics. The court has only the most elemental knowledge of CTS and its causes. Any further knowledge must come in the form of admissible evidence from the parties to this action.

For these reasons, the court reserves ruling on the admissibility of Dr. Fuhs' and Capt. Jacobsen's causation opinions, pending an evidentiary hearing in advance of trial. The hearing will begin at 9:00 a.m. on January 31, 2006, the date currently set for the opening of trial. The only witnesses permitted to testify will be Dr. Fuhs, Capt. Jacobsen, and Dr. Hadler. The purpose of the hearing will be to answer two questions. The court will first hear from each witness regarding whether it is appropriate to draw a causal inference of CTS based on the occurrence of CTS symptoms during exposure to CTS risk factors. If the court determines that such an inference is appropriate, it will hear from each witness regarding Dr. Fuhs' and Capt. Jacobsen's qualifications to assess CTS risk factors aboard the KJEVOLJA. If the court determines that such an inference is *not* appropriate, the court will hear from each witness regarding whether Dr. Fuhs' and Capt. Jacobsen's causation assessment methodology passes muster under Daubert. If Plaintiff prevails on both inquiries, the court will begin trial on February 1, 2006. If Plaintiff does not prevail, the court will grant summary judgment for the Defendants.

C.  **Rulings on Remaining Issues from Motions in Limine**

There are several issues remaining from the parties' motions in limine. As to Plaintiff's motion, the parties have agreed that Defendant will not mention Plaintiff's 1992 second degree burglary conviction, and that they will show each other all exhibits in advance of their presentation at trial. As to the issues that are still in dispute, the court rules as follows:

The court declines to prevent Defendants from providing evidence of their maintenance and cure payments. Plaintiff improperly identifies these as collateral source

ORDER – 10

payments. These payments came from Defendants, not a collateral source. Defendants are entitled to rely on them to obtain an offset, if appropriate, of a damage award. The court suggests that the parties reach a stipulation on those issues.

The court reserves ruling on the admissibility of evidence regarding Mr. Houle's past use of drugs and alcohol. The court agrees that this evidence is highly prejudicial, especially because there is no evidence that Mr. Houle has used drugs or alcohol in the past seven years. On the other hand, the evidence is potentially probative, because Dr. Hadler claims that past drug and alcohol use may have contributed to Mr. Houle's CTS. The court cannot properly weigh the potential prejudice against the probative value of this evidence on the record before it. Therefore, before any witness offers testimony or any attorney asks questions about Mr. Houle's drug and alcohol use, Dr. Hadler must appear outside of the presence of the jury to provide the court with more information about the probative value of this evidence.

Dr. Hadler may testify about the other medical conditions that may have caused Mr. Houle's CTS. On cross-examination, Mr. Houle will no doubt point out that Dr. Hadler never examined him, and that Dr. Hadler is not able to diagnose him with any other conditions. Nonetheless, Dr. Hadler is entitled to point out possible causes of CTS that Plaintiff's experts did not consider.

As to Defendants' motion in limine, Plaintiff has agreed to withdraw several witnesses to whom Defendants object. The court's rulings on expert testimony dispose of most of the remaining disputes. Plaintiff claims that it wishes to use some of the documents attached to its experts' declarations as impeachment evidence. Plaintiff is free to do so, but should be mindful that the court construes "impeachment" strictly.

ORDER – 11

## IV.  CONCLUSION

For the reasons stated above, the court reserves ruling on Defendants' summary judgment motion (Dkt. # 28).  The court directs the clerk to take the motion off calendar. The court will rule on the issues underlying that motion after the January 31 evidentiary hearing.  As to the parties' motions in limine (Dkt. ## 46, 48), the court GRANTS each motion in part and DENIES each motion in part, as stated above.

Dated this 5th day of January, 2006.

s/James L. Robart

_____
JAMES L. ROBART
United States District Judge